**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LORRAINE MARGELEWSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06 C 6349** |
| | ) | |
| **COSCO INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Lorraine Margelewski has sued her former employer, Cosco Industries ("Cosco"), for unlawful employment discrimination under the Family and Medical Leave Act, 29 U.S.C. § 2615(a), and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). Cosco has moved for summary judgment on both of Margelewski's claims. For the reasons set forth below, the Court grants Cosco's motion on all of Margelewski's claims except for her ADEA claim concerning her termination.

**I.     Background**

Margelewski began working for Cosco, part of whose business is producing stamps, as a typesetter in 1994. Although Margelewski's performance evaluations for the last several years she worked for Cosco suggest she lacked "people skills" and was sometimes late for work, they also show that her supervisors generally believed she was competent in her work.

By 2004, the area of Cosco's business in which Margelewski primarily worked—what the parties call "RSM," for rubber stamp manufacturing—had fallen off and Margelewski was

spending more than half her work time lending a hand on Cosco's production line. Although this kept Margelewski busy, her supervisors felt it was below her pay grade; her hourly wage was nearly $20, which was apparently significantly higher than the wage for line workers. In 2004, Cosco's management had discussions with Margelewski about reducing her position to part-time or cutting her pay.

In the first half of 2004, Margelewski requested and was granted intermittent FMLA leave, which she used to see to her dying mother and then to help her newly widowed father move in with her. Margelewski took a week of leave in February, two weeks in March, roughly two weeks in April, and then an unspecified number of individual days away until July 2004.

Late in 2004, Cosco's management sought to train Margelewski and other employees who did typesetting work to use software for a growing line of business, which Cosco calls "custom" or "Corporate Express." Cosco's custom work involved typesetting but used different software and resulted in products different from those in the RSM business. Margelewski received some training on the custom business software, primarily from co-workers who had themselves only recently learned the programs. Margelewski did not feel prepared to use the new programs, in part because they were run on PCs and not the Mac computers Margelewski was accustomed to using.

In June 2005, Margelewski was moved to Cosco's customer service department, where her supervisor was Octavio Colon, who in turn reported to William Roy. On October 24, 2005, Margelewski failed to take a break at the time prescribed by a new departmental break schedule. Scott Kendall, a manager in the department, told her about the new schedule and gave her a warning. Kendall believed Margelewski had learned about the new schedule from a department-wide e-mail, but that e-mail apparently had gone to an erroneous address. Margelewski took her

break at the wrong time again the next day, and Kendall again sought to give her a warning, this time in the privacy of his office.  Margelewski responded to the warning by becoming emotional, raising her voice and saying that she could not work under these conditions.  This drew the attention of Colon, who came into Kendall's office and tried to calm Margelewski down, telling her that the warning was unrelated to her performance and had to do with the break schedule only.  Margelewski, who at this point felt sick and on edge, then left the building without punching the time clock.  She later called Cosco's human resources manager to say she had left work because she was sick and had forgotten to punch out but that she would come back the next day.  That evening, however, Margelewski received a letter by courier from Cosco telling her Cosco considered her to have abandoned her job and that she should not return to work.  The decision to send the letter came out of a meeting between Colon, Kendall, and Roy that happened shortly after Margelewski left Cosco's facility.

Margelewski was fifty-five years old when her employment with Cosco ended.

## II.    Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences drawn in that party's favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## A. Margelewski's FMLA claim

Two threshold issues must be addressed before the Court can proceed with the analysis of plaintiff's claim. First, the Court rejects outright Cosco's argument that Margelewski has no FMLA retaliation claim under the terms of the statute because she "received all the FMLA leave to which she was entitled and claims only that after she returned from her leave was she subjected to purportedly adverse employment actions." Def. Br. at 5. That argument is directly contrary to governing Seventh Circuit authority to the effect that an employee who suffers an adverse employment action after returning from leave taken pursuant to the statute may pursue an FMLA retaliation claim. *See, e.g.*, *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999); *Breneisen v. Motorola, Inc.*, __ F.3d __, 2008 WL 126034, *4 (7th Cir. 2008) (citing 25 C.F.R. § 825.220(c)) ("[I]f an employee takes FMLA leave, an employer cannot use it as a negative factor in hiring, promotions, or disciplinary actions.").

The second threshold issue is raised by Cosco's argument that none of the relevant Cosco personnel were aware that Margelewski had taken FMLA leave when her employment ended. A defendant cannot be claimed to have retaliated for an employee's protected activity of which it was unaware. *See, e.g.*, *Bernier v. Morningstar*, 495 F.3d 369, 376 (7th Cir. 2007) (*citing Sitar v. Ind. Dep't of Transp.*, 344 F.3d 727 (7th Cir. 2003)). Margelewski argues that one of the relevant Cosco managers was aware she had taken FMLA leave. Specifically, she says Robert Hylton, her direct supervisor in 2004, knew because he approved the leave and hired Laura Ochoa to replace her temporarily during that period. Hylton also worked with Roy, who had a direct role in ending Margelewski's employment, to prepare her 2004 performance evaluation. Margelewski appears to argue that Roy had to have learned about her FMLA leave while working with Hylton on her evaluation, which took place while she was on intermittent leave.

4

Margelewski also suggests that for Roy to conclude in 2004 that there was not enough work for a full-time typesetter (i.e., Margelewski's job) at Cosco, he "must have closely looked at Margelewski's work history." Pl. Br. at 10.

Neither argument is sufficient to show that there is a genuine issue of fact on the threshold issue of awareness. Although Hylton knew of Margelewski's leave and worked with Roy on her evaluation, Roy testified that Hylton never told him about the leave. Roy also testified that, in preparing the evaluation, he did not notice that Margelewski was absent to an extent that would be inconsistent with routine use of sick leave or vacation time. Margelewski has no evidence to the contrary and has not pointed to evidence that a jury could or should doubt Roy's credibility. Moreover, Margelewski's leave was intermittent, which supports Roy's testimony about how he viewed her absences from work in 2004. Similarly, Margelewski's argument that Roy must have examined her work history closely to arrive at the judgment that Cosco could not justify her full-time position does not give rise to a genuine issue of fact. She has offered no basis to draw such an inference; indeed, Roy could just as easily have arrived at this judgment by reviewing customer accounts, Margelewski's wage rate (but not necessarily any other data specific to her), and Cosco's financial records.

Margelewski's FMLA retaliation claim thus cannot survive summary judgment. As the Seventh Circuit has held, a retaliation claim is simply "not implicated" if the employer is unaware of the protected activity in which the complaining employee has engaged. *Bernier*, 495 F.3d at 376.

## B. Margelewski's ADEA claim

"To establish a claim under the ADEA, a plaintiff-employee must show that 'the protected trait (under the ADEA, age) actually motivated the employer's decision'—that is, the

employee's protected trait must have 'actually played a role in the employer's decision-making process and had a determinative influence on the outcome.'" *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (*quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)). The Court approaches Margelewski's ADEA claim under the familiar framework that governs employment-discrimination actions: she may prove unlawful discrimination by her employer under either the direct or indirect method. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006).

Under the indirect method, which uses the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), Margelewski must first make a four-part prima facie showing of unlawful discrimination: she was a member of the protected class (for ADEA purposes, that she was over forty); she was meeting Cosco's legitimate expectations; she suffered a materially adverse employment action; and her job duties were absorbed by persons not in the protected class, i.e., under forty years of age. *See, e.g., Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006). If Margelewski makes this showing, the burden of production shifts to Cosco to give legitimate, nondiscriminatory reasons for its action. If it does so, Margelewski bears the burden to show that Cosco's proffered reasons are a pretext—a cover story—for unlawful age discrimination. *Id*.

It is undisputed that Margelewski is within the class of workers protected by the ADEA and that her job duties were taken over by persons under forty years of age when she left Cosco. The first disputed question is whether Margelewski was meeting Cosco's legitimate expectations. Cosco points to shortcomings documented in Margelewski's annual performance reviews. Margelewski relies mainly on the undisputed evidence that Kendall told her the

October 25, 2005 warning was unrelated to her performance and concerned only the break schedule.

A genuine issue of material fact exists as to whether Margelewski was meeting Cosco's legitimate expectations when her employment there ended. First, it is undisputed that her October 25, 2005 meeting with Colon and Kendall that supposedly led to her discharge concerned her failure to follow a new break schedule, not her performance. Second, although successive yearly evaluations of Margelewski by her supervisors pointed to an abrasive demeanor and poor acumen, they also consistently rated the quality and quantity of her output as good and her technical knowledge of typesetting as very good. Third, there is no indication that any shortcomings in Margelewski's performance prompted her supervisors to warn or discipline her about her output. These facts suggest Margelewski was meeting Cosco's legitimate expectations. The decline of RSM as a share of Cosco's business and her apparent resistance to training in a growth area of Cosco's business weigh against this conclusion. So may Margelewski's apparent abrasiveness toward co-workers, if that was one of Cosco's measures of a good employee. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004). On summary judgment, however, because it is required to construe the facts in the light most favorable to the non-movant, the Court finds that a genuine issue of material fact exists on this point.

The parties also dispute whether Margelewski suffered an adverse employment action. The facts relevant to this point can be divided into two groups: those relating to Margelewski's termination and all others. The latter set includes Margelewski's claims that Cosco supervisors denied her training and micromanaged her in an unwelcome way after she returned from leave.

The Court finds that a genuine issue of material fact exists only with regard to Margelewski's termination. Cosco argues that she suffered no adverse action because she abandoned her job voluntarily, i.e., without prompting from Cosco. Yet elsewhere Cosco concedes that the decision to end her employment was made by Cosco supervisors, albeit in response to Margelewski's leaving the premises after her heated meeting with Colon and Kendall. The fact that Cosco's courier-delivered letter to Margelewski was sent the day of the incident, rather than after three days of unexplained absence from work, which the record suggests is Cosco policy, suggests the result was more akin to termination.

With regard to the other actions that Margelewski says were adverse, the Court concludes that there is no genuine issue of material fact as to whether any of these could ground liability for age discrimination. Even if Margelewski could show these were materially adverse, Cosco can show legitimate, nondiscriminatory reasons for each of them and Margelewski has no evidence that these reasons are pretextual. *See EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149-50 (7th Cir. 1996) (*citing Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir. 1985)) ("To expedite the process it may be preferable to get past the prima facie case and examine the pertinent issue of whether there was discrimination in a job action."). For example, Margelewski claims that, after she returned from the last segment of her intermittent FMLA leave, a "change in the way that plaintiff's job had been managed" began, with closer scrutiny of her work by her superiors that amounted to intimidation and harassment. Pl. Br. at 7. (This claim of adverse treatment relates more closely to Margelewski's FMLA retaliation claim, but the Court examines it here to be on the safe side.) There is no reason to believe that any closer watch over Margelewski's activities by her superiors amounted to unlawful discrimination. It is the function of management to manage employees. Moreover, there is

8

evidence that, as RSM business began to dry up, management was concerned that Margelewski was paid too much to merely lend a hand on the production line during her substantial downtime and wanted to know exactly how she allocated her time.

With regard to her claim that Cosco denied her training, Margelewski has not offered evidence from which a reasonable jury could find that Cosco's justification that she was unreceptive to training where other employees were not is pretextual. In any event, it is questionable whether the supposed denial rises to the level of an adverse employment action. Margelewski's testimony indicates that her complaints on this point stem from Ochoa's being trained before she was on certain programs and from the quality and extent of the training Margelewski eventually received, rather than with any flat denial of training.

The adverse action of termination remains, however, and allows Margelewski to complete the prima facie case of age discrimination. The inquiry therefore shifts to Cosco's proffered reasons for her termination. Cosco claims that the relevant managers believed that Margelewski had abandoned her job. Cosco did, however, call the end of Margelewski's employment a termination for misconduct in a submission to the Illinois Department of Employment Security, and other facts likewise indicate that Cosco managers understood they were terminating Margelewski (for example, the sending of the courier letter the day of the supposed abandonment, rather than after the usual three days).

Margelewski must show either that Cosco was actually motivated by some discriminatory reason *or* that its proffered reason is unworthy of credence. *See Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003) (*citing McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 372 (7th Cir. 1992)). If an employer gives shifting, inconsistent explanations for an adverse employment action, then its reasons may be unworthy of credence

and a finding of pretext appropriate. *Id*. at 677-78 (*citing O'Neal v. City of New Albany*, 293 F.3d 998, 1005-06 (7th Cir. 2002).

On this point, *EEOC v. Our Lady of the Resurrection Med. Ctr.*, which Cosco uses to argue that the dispute over how to characterize the October 25 incident does not matter, is not to the contrary. That case did *not* concern a change in the justification offered by the employer for the employment action. Rather, the issue was whether the employer could argue at the prima facie step of the indirect method that the plaintiff had quit and then, at the justification step of the *McDonnell Douglas* framework, justify termination of the plaintiff with reference to a workplace shortcoming. The EEOC made an estoppel-like argument, rejected by both the district court and the Seventh Circuit, whose upshot was that "an employer could only dispute whether or not an employee was fired at the peril of automatically losing the case if the employee established a prima facie case." *Id*. at 148. This case is more analogous to *Zaccagnini*, in that it concerns the reasons proffered by Cosco prior to litigation, rather than arguments at distinct phases of *McDonnell Douglas*.

The Court concludes that the differing explanations offered by Cosco for ending Margelewski's employment cast sufficient doubt on the credibility of its proffered reasons to create a genuine issue of material fact. Therefore, Margelewski has satisfied the burden-shifting test under the indirect method and her ADEA claim based on her termination survives Cosco's motion for summary judgment.

Because the Court finds that Margelewski's ADEA claim avoids summary judgment under the indirect method, it need not explore the direct method, under which Margelewski would have had to put forward circumstantial evidence amounting to a "convincing mosaic . . . that allows a jury to infer intentional discrimination by the decision-maker." *Rhodes v. Ill. Dep't*

*of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (*quoting Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994) (internal quotation marks omitted)).

      **C.**      **Rule 56.1**

Cosco asks the Court to strike Margelewski's statements of facts submitted in connection with this motion because they exceed the number of paragraphs allowed under Rule 56.1 of this Court. The Court denies Cosco's request.

**III.**      **Conclusion**

For the above-stated reasons, the Court denies Cosco's motion for summary judgment as to Margelewski's ADEA discrimination claim based on her termination but otherwise grants the motion. On the Court's own motion, the trial date of February 11, 2008 is vacated, because Margalewski's lawyer represents a party in another, older case on the same joint trial call for which this case was set. The parties are directed to appear for a status hearing on January 24, 2008 at 9:30 a.m. to discuss the possibility of settlement and to set a new trial date.

                                  _____
                                  MATTHEW F. KENNELLY
                                  United States District Judge

Date: January 18, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORRAINE MARGELEWSKI,           )
                                )
            Plaintiff,           )
                                )
        vs.                      )        Case No. 06 C 6349
                                )
COSCO INDUSTRIES, INC.,          )
                                )
            Defendant.           )

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Lorraine Margelewski has sued her former employer, Cosco Industries ("Cosco"), for

unlawful employment discrimination under the Family and Medical Leave Act, 29 U.S.C. §

2615(a), and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). Cosco has

moved for summary judgment on both of Margelewski's claims. For the reasons set forth below,

the Court grants Cosco's motion on all of Margelewski's claims except for her ADEA claim

concerning her termination.

I.      **Background**

Margelewski began working for Cosco, part of whose business is producing stamps, as a

typesetter in 1994. Although Margelewski's performance evaluations for the last several years

she worked for Cosco suggest she lacked "people skills" and was sometimes late for work, they

also show that her supervisors generally believed she was competent in her work.

By 2004, the area of Cosco's business in which Margelewski primarily worked—what

the parties call "RSM," for rubber stamp manufacturing—had fallen off and Margelewski was

1

spending more than half her work time lending a hand on Cosco's production line.  Although this kept Margelewski busy, her supervisors felt it was below her pay grade; her hourly wage was nearly $20, which was apparently significantly higher than the wage for line workers.  In 2004, Cosco's management had discussions with Margelewski about reducing her position to part-time or cutting her pay.

In the first half of 2004, Margelewski requested and was granted intermittent FMLA leave, which she used to see to her dying mother and then to help her newly widowed father move in with her.  Margelewski took a week of leave in February, two weeks in March, roughly two weeks in April, and then an unspecified number of individual days away until July 2004.

Late in 2004, Cosco's management sought to train Margelewski and other employees who did typesetting work to use software for a growing line of business, which Cosco calls "custom" or "Corporate Express."  Cosco's custom work involved typesetting but used different software and resulted in products different from those in the RSM business.  Margelewski received some training on the custom business software, primarily from co-workers who had themselves only recently learned the programs.  Margelewski did not feel prepared to use the new programs, in part because they were run on PCs and not the Mac computers Margelewski was accustomed to using.

In June 2005, Margelewski was moved to Cosco's customer service department, where her supervisor was Octavio Colon, who in turn reported to William Roy.  On October 24, 2005, Margelewski failed to take a break at the time prescribed by a new departmental break schedule.  Scott Kendall, a manager in the department, told her about the new schedule and gave her a warning.  Kendall believed Margelewski had learned about the new schedule from a department-wide e-mail, but that e-mail apparently had gone to an erroneous address.  Margelewski took her

break at the wrong time again the next day, and Kendall again sought to give her a warning, this time in the privacy of his office. Margelewski responded to the warning by becoming emotional, raising her voice and saying that she could not work under these conditions. This drew the attention of Colon, who came into Kendall's office and tried to calm Margelewski down, telling her that the warning was unrelated to her performance and had to do with the break schedule only. Margelewski, who at this point felt sick and on edge, then left the building without punching the time clock. She later called Cosco's human resources manager to say she had left work because she was sick and had forgotten to punch out but that she would come back the next day. That evening, however, Margelewski received a letter by courier from Cosco telling her Cosco considered her to have abandoned her job and that she should not return to work. The decision to send the letter came out of a meeting between Colon, Kendall, and Roy that happened shortly after Margelewski left Cosco's facility.

Margelewski was fifty-five years old when her employment with Cosco ended.

## II.    Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences drawn in that party's favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

### A. Margelewski's FMLA claim

Two threshold issues must be addressed before the Court can proceed with the analysis of plaintiff's claim. First, the Court rejects outright Cosco's argument that Margelewski has no FMLA retaliation claim under the terms of the statute because she "received all the FMLA leave to which she was entitled and claims only that after she returned from her leave was she subjected to purportedly adverse employment actions." Def. Br. at 5. That argument is directly contrary to governing Seventh Circuit authority to the effect that an employee who suffers an adverse employment action after returning from leave taken pursuant to the statute may pursue an FMLA retaliation claim. *See, e.g.*, *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999); *Breneisen v. Motorola, Inc.*, __ F.3d __, 2008 WL 126034, *4 (7th Cir. 2008) (citing 25 C.F.R. § 825.220(c)) ("[I]f an employee takes FMLA leave, an employer cannot use it as a negative factor in hiring, promotions, or disciplinary actions.").

The second threshold issue is raised by Cosco's argument that none of the relevant Cosco personnel were aware that Margelewski had taken FMLA leave when her employment ended. A defendant cannot be claimed to have retaliated for an employee's protected activity of which it was unaware. *See, e.g.*, *Bernier v. Morningstar*, 495 F.3d 369, 376 (7th Cir. 2007) (*citing Sitar v. Ind. Dep't of Transp.*, 344 F.3d 727 (7th Cir. 2003)). Margelewski argues that one of the relevant Cosco managers was aware she had taken FMLA leave. Specifically, she says Robert Hylton, her direct supervisor in 2004, knew because he approved the leave and hired Laura Ochoa to replace her temporarily during that period. Hylton also worked with Roy, who had a direct role in ending Margelewski's employment, to prepare her 2004 performance evaluation. Margelewski appears to argue that Roy had to have learned about her FMLA leave while working with Hylton on her evaluation, which took place while she was on intermittent leave.

Margelewski also suggests that for Roy to conclude in 2004 that there was not enough work for a full-time typesetter (i.e., Margelewski's job) at Cosco, he "must have closely looked at Margelewski's work history." Pl. Br. at 10.

Neither argument is sufficient to show that there is a genuine issue of fact on the threshold issue of awareness. Although Hylton knew of Margelewski's leave and worked with Roy on her evaluation, Roy testified that Hylton never told him about the leave. Roy also testified that, in preparing the evaluation, he did not notice that Margelewski was absent to an extent that would be inconsistent with routine use of sick leave or vacation time. Margelewski has no evidence to the contrary and has not pointed to evidence that a jury could or should doubt Roy's credibility. Moreover, Margelewski's leave was intermittent, which supports Roy's testimony about how he viewed her absences from work in 2004. Similarly, Margelewski's argument that Roy must have examined her work history closely to arrive at the judgment that Cosco could not justify her full-time position does not give rise to a genuine issue of fact. She has offered no basis to draw such an inference; indeed, Roy could just as easily have arrived at this judgment by reviewing customer accounts, Margelewski's wage rate (but not necessarily any other data specific to her), and Cosco's financial records.

Margelewski's FMLA retaliation claim thus cannot survive summary judgment. As the Seventh Circuit has held, a retaliation claim is simply "not implicated" if the employer is unaware of the protected activity in which the complaining employee has engaged. *Bernier*, 495 F.3d at 376.

### B.      Margelewski's ADEA claim

"To establish a claim under the ADEA, a plaintiff-employee must show that 'the protected trait (under the ADEA, age) actually motivated the employer's decision'—that is, the

employee's protected trait must have 'actually played a role in the employer's decision-making process and had a determinative influence on the outcome.'" *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (*quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)). The Court approaches Margelewski's ADEA claim under the familiar framework that governs employment-discrimination actions: she may prove unlawful discrimination by her employer under either the direct or indirect method. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006).

Under the indirect method, which uses the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), Margelewski must first make a four-part prima facie showing of unlawful discrimination: she was a member of the protected class (for ADEA purposes, that she was over forty); she was meeting Cosco's legitimate expectations; she suffered a materially adverse employment action; and her job duties were absorbed by persons not in the protected class, i.e., under forty years of age. *See, e.g., Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006). If Margelewski makes this showing, the burden of production shifts to Cosco to give legitimate, nondiscriminatory reasons for its action. If it does so, Margelewski bears the burden to show that Cosco's proffered reasons are a pretext—a cover story—for unlawful age discrimination. *Id*.

It is undisputed that Margelewski is within the class of workers protected by the ADEA and that her job duties were taken over by persons under forty years of age when she left Cosco. The first disputed question is whether Margelewski was meeting Cosco's legitimate expectations. Cosco points to shortcomings documented in Margelewski's annual performance reviews. Margelewski relies mainly on the undisputed evidence that Kendall told her the

October 25, 2005 warning was unrelated to her performance and concerned only the break schedule.

A genuine issue of material fact exists as to whether Margelewski was meeting Cosco's legitimate expectations when her employment there ended. First, it is undisputed that her October 25, 2005 meeting with Colon and Kendall that supposedly led to her discharge concerned her failure to follow a new break schedule, not her performance. Second, although successive yearly evaluations of Margelewski by her supervisors pointed to an abrasive demeanor and poor acumen, they also consistently rated the quality and quantity of her output as good and her technical knowledge of typesetting as very good. Third, there is no indication that any shortcomings in Margelewski's performance prompted her supervisors to warn or discipline her about her output. These facts suggest Margelewski was meeting Cosco's legitimate expectations. The decline of RSM as a share of Cosco's business and her apparent resistance to training in a growth area of Cosco's business weigh against this conclusion. So may Margelewski's apparent abrasiveness toward co-workers, if that was one of Cosco's measures of a good employee. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004). On summary judgment, however, because it is required to construe the facts in the light most favorable to the non-movant, the Court finds that a genuine issue of material fact exists on this point.

The parties also dispute whether Margelewski suffered an adverse employment action. The facts relevant to this point can be divided into two groups: those relating to Margelewski's termination and all others. The latter set includes Margelewski's claims that Cosco supervisors denied her training and micromanaged her in an unwelcome way after she returned from leave.

The Court finds that a genuine issue of material fact exists only with regard to Margelewski's termination.  Cosco argues that she suffered no adverse action because she abandoned her job voluntarily, i.e., without prompting from Cosco.  Yet elsewhere Cosco concedes that the decision to end her employment was made by Cosco supervisors, albeit in response to Margelewski's leaving the premises after her heated meeting with Colon and Kendall.  The fact that Cosco's courier-delivered letter to Margelewski was sent the day of the incident, rather than after three days of unexplained absence from work, which the record suggests is Cosco policy, suggests the result was more akin to termination.

With regard to the other actions that Margelewski says were adverse, the Court concludes that there is no genuine issue of material fact as to whether any of these could ground liability for age discrimination.  Even if Margelewski could show these were materially adverse, Cosco can show legitimate, nondiscriminatory reasons for each of them and Margelewski has no evidence that these reasons are pretextual.  *See EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149-50 (7th Cir. 1996) (*citing Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir. 1985)) ("To expedite the process it may be preferable to get past the prima facie case and examine the pertinent issue of whether there was discrimination in a job action.").  For example, Margelewski claims that, after she returned from the last segment of her intermittent FMLA leave, a "change in the way that plaintiff's job had been managed" began, with closer scrutiny of her work by her superiors that amounted to intimidation and harassment.  Pl. Br. at 7.  (This claim of adverse treatment relates more closely to Margelewski's FMLA retaliation claim, but the Court examines it here to be on the safe side.)  There is no reason to believe that any closer watch over Margelewski's activities by her superiors amounted to unlawful discrimination.  It is the function of management to manage employees.  Moreover, there is

evidence that, as RSM business began to dry up, management was concerned that Margelewski was paid too much to merely lend a hand on the production line during her substantial downtime and wanted to know exactly how she allocated her time.

With regard to her claim that Cosco denied her training, Margelewski has not offered evidence from which a reasonable jury could find that Cosco's justification that she was unreceptive to training where other employees were not is pretextual. In any event, it is questionable whether the supposed denial rises to the level of an adverse employment action. Margelewski's testimony indicates that her complaints on this point stem from Ochoa's being trained before she was on certain programs and from the quality and extent of the training Margelewski eventually received, rather than with any flat denial of training.

The adverse action of termination remains, however, and allows Margelewski to complete the prima facie case of age discrimination. The inquiry therefore shifts to Cosco's proffered reasons for her termination. Cosco claims that the relevant managers believed that Margelewski had abandoned her job. Cosco did, however, call the end of Margelewski's employment a termination for misconduct in a submission to the Illinois Department of Employment Security, and other facts likewise indicate that Cosco managers understood they were terminating Margelewski (for example, the sending of the courier letter the day of the supposed abandonment, rather than after the usual three days).

Margelewski must show either that Cosco was actually motivated by some discriminatory reason *or* that its proffered reason is unworthy of credence. *See Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003) (*citing McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 372 (7th Cir. 1992)). If an employer gives shifting, inconsistent explanations for an adverse employment action, then its reasons may be unworthy of credence

and a finding of pretext appropriate. *Id*. at 677-78 (*citing O'Neal v. City of New Albany*, 293 F.3d 998, 1005-06 (7th Cir. 2002).

On this point, *EEOC v. Our Lady of the Resurrection Med. Ctr.*, which Cosco uses to argue that the dispute over how to characterize the October 25 incident does not matter, is not to the contrary. That case did *not* concern a change in the justification offered by the employer for the employment action. Rather, the issue was whether the employer could argue at the prima facie step of the indirect method that the plaintiff had quit and then, at the justification step of the *McDonnell Douglas* framework, justify termination of the plaintiff with reference to a workplace shortcoming. The EEOC made an estoppel-like argument, rejected by both the district court and the Seventh Circuit, whose upshot was that "an employer could only dispute whether or not an employee was fired at the peril of automatically losing the case if the employee established a prima facie case." *Id*. at 148. This case is more analogous to *Zaccagnini*, in that it concerns the reasons proffered by Cosco prior to litigation, rather than arguments at distinct phases of *McDonnell Douglas*.

The Court concludes that the differing explanations offered by Cosco for ending Margelewski's employment cast sufficient doubt on the credibility of its proffered reasons to create a genuine issue of material fact. Therefore, Margelewski has satisfied the burden-shifting test under the indirect method and her ADEA claim based on her termination survives Cosco's motion for summary judgment.

Because the Court finds that Margelewski's ADEA claim avoids summary judgment under the indirect method, it need not explore the direct method, under which Margelewski would have had to put forward circumstantial evidence amounting to a "convincing mosaic . . . that allows a jury to infer intentional discrimination by the decision-maker." *Rhodes v. Ill. Dep't*

*of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (*quoting Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994) (internal quotation marks omitted)).

     **C.**     **Rule 56.1**

Cosco asks the Court to strike Margelewski's statements of facts submitted in connection with this motion because they exceed the number of paragraphs allowed under Rule 56.1 of this Court. The Court denies Cosco's request.

**III.**     **Conclusion**

For the above-stated reasons, the Court denies Cosco's motion for summary judgment as to Margelewski's ADEA discrimination claim based on her termination but otherwise grants the motion. On the Court's own motion, the trial date of February 11, 2008 is vacated, because Margalewski's lawyer represents a party in another, older case on the same joint trial call for which this case was set. The parties are directed to appear for a status hearing on January 24, 2008 at 9:30 a.m. to discuss the possibility of settlement and to set a new trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 18, 2008